UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KERRY WOLONGEVICZ                                    **SECOND**
                                                      **AMENDED COMPLAINT**
                        Plaintiff,
                                                      5: 17-CV-00933
            v.                                        BKS/DEP

                                                      Jury Trial Demanded

TOWN OF MANLIUS; MANLIUS POLICE DEPARTMENT;
VILLAGE OF MANLIUS; MANLIUS FIRE DEPARTMENT;
CAPTAIN KEVIN SCHAFER; CHIEF PINSKY; CHIEF OF POLICE
FRANCIS MARLOWE; INVESTIGATOR JAMES GALLUP;
OFFICER ROSS CARNIE; CAPTAIN JEFF PECKINS;
SGT. CHRISTOPHER CUSHMAN; BENJAMIN SCHMID;
JOHN DOE(S) and JANE DOE(S)

                        Defendants.
_____

        Plaintiff, KERRY WOLONGEVICZ, by and through her undersigned counsel, as and for an

Amended Complaint against Defendants, TOWN OF MANLIUS; MANLIUS POLICE

DEPARTMENT; VILLAGE OF MANLIUS; MANLIUS FIRE DEPARTMENT; CAPTAIN KEVIN

SCHAFER; CHIEF PINSKY; CHIEF OF POLICE FRANCIS MARLOWE; INVESTIGATOR

JAMES GALLUP; OFFICER ROSS CARNIE; CAPTAIN JEFF PECKINS; SGT. CHRISTOPHER

CUSHMAN; BENJAMIN SCHMID, JOHN DOE(S) and JANE DOE(S), states as follows:

## **INTRODUCTION**

        1. The nature of this action is one which seeks to recover money damages as a result of the

intentional, reckless, negligent, and/or grossly neglect conduct of the Defendants herein.  Plaintiff

has been subjected to ongoing violations of her rights under the Constitution, the laws of the State

of New York and Title VII of the Civil Rights Act of 1964, as amended (Title VII).

## JURISDICTION AND VENUE

2.  Jurisdiction is conferred upon this Court pursuant to the Constitution and laws of the State of New York and the United States of America.

3.  Venue is proper in Onondaga County pursuant to CPLR 504(2).

## PARTIES

4. Plaintiff Kerry Wolongevicz is a female citizen of the United States and was a resident of the County of Onondaga and State of New York.  She was at all times relevant herein an employee (police officer) of the Manlius Police Department, since on or about January, 2008.

5.  Defendant, Village of Manlius Fire Department is a municipal corporation organized and existing under the laws of the State of New York and at all relevant times had its principal place of business at 4 Stickley Drive, Manlius, NY 13104.

6.  Defendant, Town of Manlius is a municipal corporation organized and existing under the laws of the State of New York and at all relevant times had its principal place of business at One Arkie Albanese Ave. Manlius NY 13104.  At all times relevant hereto, this Defendant employed the Plaintiff and the hereinbefore named individual Defendants. The said Town of Manlius and the Police Department is by law responsible for the wrongdoing of officers and employees of the Town of Manlius Police Department and by law responsible for the direct participation and endorsement of the unconstitutional and unlawful customs, policies, and practices of the other Defendants. This Defendant was also aware, through its officers, legislators, and agents, of the long-standing unlawful customs, policies and practices of the other named Defendants, and deliberately and/or negligently failed to take action to correct the unlawful customs, policies and practices of the other Defendants.

7. Defendant, Francis Marlowe, at all times relevant to this Complaint, was the duly appointed Chief of the Defendant Town of Manlius Police Department. As such, he is the employer of the Plaintiff and other named individual Defendants and responsible, among other things, for the training, supervision, discipline and conduct of the other named Defendants, who are also Plaintiff's supervisors.  They are also responsible, by law, for enforcing the rules and regulations of the State of New York and Town of Manlius and for insuring that employees of the Police Department obey the laws of the State of New York and the United States. As Plaintiff's supervisors during her employment at Town of Manlius Police Department, they had the power to make personnel decisions regarding Plaintiff's employment.

8. All of the above-named Defendants are responsible for the establishment and perpetuation of a hostile work environment and discriminatory and retaliatory policies, customs, practices and habits of the Manlius Police Department and also aided and abetted the unlawful conduct described herein. The Defendants all are equally responsible and legally accountable for the unlawful conduct of each other for their actions and/or failing to intercede and prevent the discriminatory and retaliatory conduct.

9. During all times mentioned in this Complaint, Defendants were acting within the scope of their employment and under color of law, namely, under color of the Constitution, statutes, laws, charters, ordinances, rules, regulations, customs, and usages of the State of New York and the Town and Village of Manlius in the State of New York.

**CONDITIONS PRECEDENT**

10. On or about August 3, 2016, a Notice of Claim was duly served upon the Defendants. Additionally, on or about said date, Plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC"). Plaintiff's EEOC complaint was cross-filed with the New York State Division of Human Rights pursuant to a work-share agreement.

11. At least 30 days has elapsed since service of such Notice of Claim and payment thereof has been refused. Additionally, on or about May 18, 2017, the U.S. Department of Justice, Civil Rights Division issued a Notice of Right to Sue letter to Plaintiff.

## FACTS

12. This complaint is in all respects based upon past and continuing and ongoing harm and injury caused by the Defendants in their discriminatory and retaliatory acts and policies. Such acts and polices are illegally imposed on the Plaintiff by the defendants employing and endorsing a policy which treats women as second class citizens and excludes women from certain assignments, training, positions of visibility, authority, and power, and denies or delays women assignments, training, or transfers which lead to supervisory and management opportunities while affording them to male counterparts. Further, denying women access to these assignments, training, and positions leads to lower pay and fewer benefits.

13. Plaintiff was denied assignment as a Field Training Officer and denied and/or delayed trainings for five years while male officers with the same or less experience were granted said assignments and timely training.

14. Defendants hold female officers to higher standards and scrutiny while allowing male officers to evade discipline or criticism. For example, Plaintiff received formal discipline by Captain Schafer and Chief Marlowe in or about 2011 for a error in a traffic stop, while other male officers receive no penalty or alleged "progressive discipline" for similar or more egregious conduct.

15. On or about November, 2013, Officer James Gallup, a white male, made derogatory

comments about Plaintiff being a police officer while in firearms training. Further, he made derogatory statements about females, including comments regarding the female anatomy. He further stated that he had recently "fucked" a drunk Le Moyne College "chick" and that she was so drunk she had no idea what was going on and that when he was done with her he left her on the front steps of her dorm. He stated he was going to pull his dick out at one point and a co worker,  Tyrel stated that Plaintiff should pull "her dick out too". Plaintiff completed the firearms training that day, but felt humiliated, disgraced, and isolated as if she didn't belong there due to her gender. Said conduct of Officer Gallup created a hostile and discriminatory work environment and interfered with Plaintiff's performance and concentration, adversely affecting the terms and conditions of her employment.

16.  Following discussions of her concerns with others, Plaintiff made a complaint about the incidents to Sergeant Slater, Plaintiff's supervisor. On information and belief, Sgt. Slater reported the complaint to Captain Ackerman who also met with Plaintiff.  After providing details of the incident and sharing her distress, she left early and Slater gave Plaintiff an EAP card (employee assistance program) to contact for support.  The EAP program referred Plaintiff to a therapist who met with her regularly for approximately one year due to work environment-related stress.

17. Manlius Police Chief Marlowe informed Plaintiff that following an investigation, Officer Gallup had received a "training memo", rather than discipline, explaining that his discipline was "progressive". On information and belief, Defendants Town of Manlius were aware at the time that Officer Gallup was under military investigation regarding a betting ring about female soldiers in his unit. Plaintiff inquired if someone had contacted Le Moyne College to check for any reports of rape and he stated "no". Plaintiff asked to speak to the Town Supervisor as she was not comfortable with

the investigation or the meagerness of Officer Gallup's penalty. Chief Marlowe angrily instructed Plaintiff not to talk to the town supervisor and that if she spoke to anyone about the matter, including friends or other officers, that she would be the one disciplined. He further chastised her that she should have reported it immediately while at training and not a week later. Marlowe's reaction made clear that Plaintiff's complaint was unwelcome and ill-advised and that he harbored malice and animus against her both because she is a woman and because she complained of conduct of a male officer mistreating a female. On information and belief, other women at Manlius Police Department have complained about Officer Gallup's conduct before and after this time and those complaints were dismissed as "personality conflict".

18.   Officer Gallup thereafter refused to speak with Plaintiff because of her complaint about his conduct and openly disrespected her and her presence without consequence. As recently as April, 2016, Officer Gallup also expressed his discriminatory bias by stating, in sum and substance, he was "sick of you females walking around like you own the place."

19.   Another white male officer, Officer LEO CAPRIA reportedly placed his testicles on communal food which Plaintiff consumed and after which she was laughed at and advised to "next time check for pubic hair".

20 . LEO CAPRIA, received a "training memo" for stating that a female citizen motorist "needed to be ass fucked" while a ride-along juvenile was in the patrol car.  He thereafter shared the memo with Plaintiff and others at an in-service training while restating that the female he pulled over "needed to be ass fucked." This same officer bragged about having affairs with women while on duty in patrol cars, behind Town Center, Green Lakes, and substations until 2013, when he retired.  On information and belief, Officer Capria continues to brag about such things as he now serves as a

courtroom deputy for the Village of Manlius.

21.  On occasions too numerous to mention, the male officers would brag or discuss having sex with their wives or other women and/or "swapping" wives in Plaintiff's presence throughout her employment up through April, 2016.

22.  Officer Cushman, a white male, was promoted to Sgt. in Fall, 2014. Sgt. Cushman advised officers that Plaintiff was "trouble", including to Officer Beth Brainard. He also made statements in front of Plaintiff multiple times stating, in sum and substance, that his wife "wasn't fucking him so he had to get it somewhere else as long he found the right woman who wouldn't say anything about it." Additionally, he made multiple statements about a Turkish prison he purportedly visited while on military deployment where women were imprisoned to pay off their husbands debts as prostitutes. Sgt. Cushman often talked about his visits there and how fun it was to pick the woman he wanted to have sex with. Further, he would discuss renting an apartment to carry on an affair and represented that he falsified a letter reflecting that he was to be deployed so that he could get out of the remainder of the lease when the affair ended.

23.  After Sgt. Cushman's promotion, Plaintiff's coworkers began to distance themselves from Plaintiff and she learned that he had told officers not to associate or meet up with her. Plaintiff had productive and professional working relationships in the past with sergeants and hoped that it would pass when he got to know her. Things became consistently worse. In roll call he wouldn't acknowledge or look at Plaintiff and would only talk to the male officers. Said conduct damaged and changed Plaintiff's work environment, causing Plaintiff embarrassment, stress and anxiety. At one point, Sgt. Cushman told Plaintiff to "find another fucking job" and yelled at Plaintiff, hanging up on her when she called him with questions regarding a call.

24.  Plaintiff reported the incident to Lt. Peckins the next day and provided him with a memo regarding the issues with Sgt. Cushman. She learned Sgt. Cushman had made a complaint about her the night before purportedly because she went to another supervisor, Sgt. Hatter regarding an extension with a report.  Such allegation was a complete fabrication as Plaintiff had never done such a thing. After being investigated by Captain Peckins this allegation was deemed to be unfounded and untrue. On information and belief, Sgt. Cushman was not disciplined for this lie and instead Plaintiff was admonished to "communicate better" even though Plaintiff had done nothing wrong. Plaintiff complained to Lt Peckins of discrimination and that if she were any of the males on her shift he would not treat her that way.

25.  On information and belief,  Lt. Peckins and others conducted an internal affairs investigation regarding Plaintiff's memo. Officers Beth Brainard and Angela Palmer also wrote memos regarding their own poor and harassing experiences with Sgt. Cushman. Sgt. Cushman was not their direct supervisor and yet it was clear that he would single out the females. When the investigation was completed Shafer, Marlowe, and Peckins advised Plaintiff and the others that the issues with Sgt. Cushman had been addressed. Plaintiff, Officer Brainard, and Officer Palmer expressed concern for Plaintiff's well being as she was working directly under him. They were told that they (Marlowe & Peckins) would "keep an eye" on it. Several days later Sgt. Cushman retaliated and told Plaintiff's fellow officers to be careful around her as she had gotten him written up.  Reports to Captain Peckins were dismissed as he claimed they could not prevent him from talking about it. Cushman is a white male and Plaintiff had been warned and Ordered not to discuss her complaint regarding Officer Gallup with anyone, including the Town Supervisor, let alone other officers or personal friends.

26.   Approximately two weeks later Sgt. Cushman failed to provide critical backup to Plaintiff causing the abandoned pursuit of a reckless motorcyclist in violation of Vehicle and Traffic Law. On information and belief, he then conspired with Captain Peckins to make Plaintiff believe a "citizen" had called with a concern about the pursuit. When Plaintiff confronted Peckins with her knowledge that it was really Cushman as he witnessed the beginning of the pursuit, failing to assist, Peckins admitted it was Cushman. Capt. Peckins told Plaintiff that he reviewed the dash cam footage and told her that she had done everything correctly and within policy. When asked why Sgt. Cushman hadn't assisted as this was a serious officer safety issue, Capt Peckins stated "Well this is what we were worried about with you working with him after everything, we will keep an eye on it." On information and belief, Sgt. Cushman bragged to others including Sergeant Stanton that he had reported Plaintiff's pursuit. Plaintiff made it clear to Peckins that Cushman was putting safety at risk and that he would have backed any of the male officers up without hesitation. Despite this knowledge, Peckins and others failed to take action or discipline against Cushman for his lack of assistance or unprofessional discriminatory and retaliatory conduct. Further, his preferential treatment as a male is in stark contrast to the exacting expectations of Plaintiff as a result of her gender and certain discipline if ever it was she who had not assisted another officer.

27.   Plaintiff further expressed concern to Peckins regarding Sgt. Cushman's friendship and affiliation with her male coworkers outside of work as they often meet at local bars. Plaintiff learned from Mary Alice Boyke that Cushman also would host frequent on-shift barbeques with Plaintiff's co-workers and exclude Plaintiff in 2015 and into 2016.   This and other retaliatory and discriminatory conduct completely isolated and ostracized Plaintiff and was sanctioned by the administration in that they failed to intervene or halt such conduct.

28.   The Manlius Police Department and Sgt. Cushman fostered further hostile work environment by discriminatory and retaliatory treatment of Plaintiff by directing coworkers to complain about Plaintiff. Ofc. Dashno stated that Sgt. Cushman had asked everyone to write memos complaining about Plaintiff in or about May 1st or 2nd 2016.  Officer Dashno stated that he did not want to write the memo but felt he had to because Sgt. Cushman was his supervisor. Despite such knowledge, Captain Peckins and others failed to take action against Sgt. Cushman. PBA President Officer Buzzard told Plaintiff that he heard her shift wanted nothing to do with her and that she was a "man hater."  In spite of awareness that Sgt. Cushman and others would not fairly and consistently supervise Plaintiff's shift, Capt Peckins only suggested changing Plaintiff's shift, endorsing Sgt. Cushman's conduct and the discriminatory and retaliatory hostile work environment.

29.  Further, Sergeant Cushman demonstrated discrimination and his disdain for women by orchestrating the non-hiring of Smith a new female officer applicant from Cicero, NY on or about April, 2016.  When Cushman learned of her application, he called three Cicero Officers and told them to "Get dirt on her" so that she wouldn't be hired. On information and belief he stated in sum and substance, "what does that broad think she's doing applying to my department? Is she stupid?" He then sought to instigate rumors about her to prevent her from being hired. Smith was not hired because of rumors. When she called to ask Schafer to see that Cushman stop his behavior, he hung up the phone on her.

30. On or about 2014, Plaintiff briefly dated a fellow officer Carnie. Thereafter, officer Carnie persisted in open and notorious resentful and hostile treatment of Plaintiff. In or about April, 2016 Carnie complained during roll call that Plaintiff was scheduled for a May general topics school after she replied to an inquiry regarding same by Sergeant Hatter. Plaintiff was almost never chosen

for such schools and was very excited.  Carnie insulted Plaintiff suggesting she was unworthy stating, in sum and substance, "You? Why would they send you?" and "maybe they are hoping you'll learn something" further contributing to the denigration of Plaintiff and the hostility in the work environment.

31.   On or about May 4th, 2016, Plaintiff informed the Manlius Police Department that she had to obtain an Order of Protection against a volunteer firefighter and former boyfriend, Benjamin Schmid. Schmid was aware of the hostile work environment and discriminatory and retaliatory conduct of Plaintiff's co-workers because Plaintiff told him about such incidents while she was in a relationship with him.  After the relationship and previous to the Order of Protection, Benjamin Schmid had threatened to, and, upon information and belief, did make complaints to Plaintiff's employer knowing that such complaints would subject her to further retaliation and discrimination by her employer. Schmid also made such complaints, on information and belief, in an attempt to harm Plaintiff and coerce Plaintiff to meet with him and/or continue the relationship, and to damage and impugn Plaintiff's character and reputation. The Order was a complete stay-away Order, prohibiting him from going to Plaintiff's work. Both Schmid and Chief Marlowe and others in the department were aware of the nature of the Order and that Schmid's presence at her place of work was a violation of the stay away Order. Further on information and belief, Schmid told Pinsky he had made complaints about Plaintiff to her employer and that she had obtained an Order of Protection from him. On information and belief, Schmid was a close ally of Pinsky and Pinsky contacted Plaintiff's employer at Schmid's urging and he was told that Plaintiff had resigned.

32.   On May 6, 2016 Plaintiff was summoned by Captain Schafer who advised her that she was now the subject of a internal affairs investigation. He stated to her that Benjamin Schmid had

come to the station to make complaints about her. Captain Schafer was aware of the Order of Protection was a full stay away order of protection from her ex boyfriend as a result of his treatment of her. He stated that Benjamin Schmid had accused her of threatening firefighters from Manlius back in December, 2015.  Defendant Schmid's accusation was false. Plaintiff explained to Capt Schafer that her ex boyfriend was angry that she had refused to talk to him and that she had obtained an order of protection, which he already knew. She also informed him that he had threatened to go to her police department and tell them she didn't secure her weapon in a safe at home if she did not talk to him. Capt Schafer admitted to Plaintiff that he had told him that. Plaintiff asked why Schmid had not been arrested for violating the order. Capt Schafer stated that it would not be "entertained", causing Plaintiff distress and that Capt Schafer was treating her like a criminal and not his officer or worthy of protection as a domestic violence victim.

33.    Thereafter, Plaintiff felt a severe pain in her chest area and found it difficult to breathe or speak. Pursuant to order of Capt. Schafer, Plaintiff then removed the weapons from her belt and placed them on his desk.  Schafer acted with malice and used wrongful means as he had no lawful right to require Plaintiff to surrender her equipment. Plaintiff told him that she needed to go. As she left the building, Capt Schafer followed her to her truck, asking for her keys, identification and badge which she handed him. Shortly thereafter, Capt Schafer and Chief Marlowe came to her home. Chief Marlowe approached her in her front yard and she stated that Schmid had violated the Order and Marlowe merely explained that the Internal Affairs Investigation was necessary as against the Plaintiff due to Schmid's allegations and that there were no criminal allegations and then they left.

34.  At that time, Plaintiff called a friend to come to her home, Deputy Helen Salling, as she was extremely distraught. While waiting for her, Plaintiff received a phone call at approximately 7

p.m. from a male who identified himself in his official capacity as Manlius Fire Chief Pinsky. He stated that he "just heard you resigned" from Schafer and "what if I told you I can make all this go away?". He proceeded to attempt to intimidate Plaintiff into dropping the order of protection against Benjamin Schmid, as they are friends. He stated, in sum and substance, that he could make the internal affairs investigation and or complaints against her "all go away" and that "all she needed to do" was call the DA's office and "drop all this." Deputy Salling was present for part of the conversation and convinced her to hang up the phone on Pinsky as he was speaking aggressively and threatening that he would have **his** firefighters report on her and that he would "file" against her brother too.  He stated "its not a threat, that's what is going to happen", before Plaintiff hung up the phone. Chief Pinsky also sent her threatening text messages. As a Chief of the Manlius Fire Department, Pinsky was speaking as a policy-making official who had the authority and means to control and instruct other members of the fire department in their conduct and actions.

35.     Plaintiff contacted Capt Schafer and Chief Marlowe and advised them that Schmid was now attempting to intimidate her by third-party contact *via* the fire chief, Pinsky. They came to her home.  Plaintiff stated again that the Order had been violated, but they did not want to investigate the matter. Chief Marlowe then stated that he could call Chief Pinsky and tell him not to call her anymore. At that time, Capt. Schafer requested that she turn in her off-duty Taurus .380, which she did. Chief Marlowe stated to her to "keep in touch", or words to that effect, and left.

36. Thereafter, at approximately 11:30 p.m., Plaintiff's supervisor from her part-time job called and asked if she was ok. He stated that Capt Schafer called him and told him she had "resigned".  Plaintiff did not resign.

37. Around 1 p.m. the next day, Plaintiff called her brothers for assistance and told them she

needed to go home to Massachusetts but that she was extremely distressed and could not drive. Plaintiff's brother, Chris arranged to drive her to Albany where her other brother Daniel would meet her and drive her the rest of the way. While she was packing, a State Trooper came to her home and told her and Chris that Benjamin Schmid had called to make a complaint that Chris had texted him two weeks earlier (before the order) telling him to stay away from Plaintiff and her home. Plaintiff informed the Trooper what had occurred the day before at her workplace and he stated that he always liked working with her and expressed disbelief regarding the Plaintiff's treatment by the Manlius Police Department. Over the next few days Plaintiff received several phone calls from the NYS Troopers to advise that   firefighters had come in to report that she had been acting in a threatening manner in December, 2015 at the Manlius fire station. On information and belief, Chief Pinsky and Benjamin Schmid encouraged and/or directed such reports to intimidate and threaten Plaintiff. Further, on information and belief, the NYS Troopers investigated and found no evidence that these allegations were true. They also informed Plaintiff they investigated the matter further and that Chief Pinsky's conduct may have constituted intimidation of a witness.

38. In Massachusetts, Plaintiff went to South Shore Hospital Massachusetts for severe stress. She was thereafter administered sedation and remained there most of the day.  When Plaintiff called Chief Marlowe on Saturday morning to request extended sick leave, Marlowe stated that she had resigned and they "had already processed the paperwork and the attorney had already filed it". Marlowe then stated to Plaintiff, "you stay in touch, ya hear".  Plaintiff is currently in therapy because of the discriminatory and retaliatory treatment by the Defendants.  On or about June 17, 2016, Plaintiff, through her undersigned attorney, submitted to the Defendants, Town of Manlius and Manlius Police Department a completed Accident/Injury/Exposure Report and Employee Claim (C-

3) form, seeking Workers Compensation benefits and benefits under Gen. Mun. Law 207-c. Said Report and Claim, which was accompanied by medical documentation, alleged, among other things, that Plaintiff's medical leave arose from "incidents from the past three years involving sexual harassment ..." Despite demand for same, the Defendants Town of Manlius and Marlowe failed and refused to process or provide Plaintiff General Municipal Law 207-c benefits to which she is entitled as her injury is work-related. Further, the Defendant Town of Manlius controverted Plaintiff's worker's compensation claim without a good faith basis to do so. Because her pay was suspended shortly after she went out on medical leave, Plaintiff suffered special damages in the form of loss of wages and benefits by virtue of the failure to process and approve her applications for benefits. On or about October 31, 2016, Plaintiff's employment with the Town of Manlius was terminated on the pretextual basis that she resigned.

39. The Defendants Schafer, Cushman, Peckins, Marlowe, Pinsky, Gallup, and others have created and/or continued a hostile work environment and subjected women to retaliation and discriminatory and disparate treatment. The acts that constitute and contribute to such a hostile work environment include viewing women as sexual objects or subjects of amusement in the sexual enslavement of women as prostitutes in Turkey. On occasions too numerous to mention making sexual and derogatory remarks about females and their bodies, and treating women as unworthy or beneath dignity. Additionally, Defendant Schmid has referenced Plaintiff in a derogatory fashion implicating her gender, including repeatedly calling her a "dumb psycho bitch" when he was personally served with the Summons and Complaint in this matter. These actions cause the Plaintiff to be intimidated and subject to sexual scrutiny, subjecting her to hostile and disparate treatment so pervasive as to interfere with her work, and retaliation for daring to report and complain about that

treatment.

40. The Defendants subject females to higher standards of performance and adherence to rules and regulations while excusing men from the same standards of behavior.

41. As set forth but not limited to the above, Plaintiff was subjected to retaliation for complaints of discrimination and a hostile work environment. She was ostracized, ignored, isolated, endangered, and threatened. On information and belief, one or more of the Defendants called her sexually offensive names to other persons at the workplace.

42. At all times relevant herein, Kerry Wolongevicz was an "Employee" of the Defendants and the Defendants were an "Employer" of the Plaintiff and/or aiders and abettors as provided for by Title VII and the Human Rights Law of the State of New York.

43. The acts of the Defendants have caused the Plaintiff extreme anxiety, stress, fear, sleeplessness, concern, headaches, stomach upset, tension, nervousness, pain, insomnia, damage to her name and reputation and other injury.

44. At all times mentioned in this Complaint, Defendants acted both individually and/or jointly and in concert with each other. Each Defendant had the duty and the opportunity to protect Plaintiff from the unlawful actions of the other Defendants but each Defendant failed and/or refused to perform such duty, thereby proximately contributing to and causing Plaintiff's injuries.

45. The Plaintiff holds the position of Police Officer for the Defendant Town of Manlius Police Department. Plaintiff is a female and as such is a member of a protect class.

46. Plaintiff is a civil service employee and a member of the Union and employees as such are protected by the contract in effect entered into by the Town of Manlius with its employees. Such contract provides for the fair and equal treatment in matters of pay and terms of employment

including discipline and sanctions for misconduct of employees without regard to gender, race, age, or other classification.  Additionally, such contract specifically provides that "[i]n all disciplinary proceedings the officer shall be presumed innocent until proven guilty and the burden of proof on all matters shall rest upon the Employer;" (Contract, Article XI - Grievance and Discipline Procedures, 2(c); "An officer shall not be coerced, intimidated, nor suffer any reprisals either directly or indirectly that may adversely affect his hours, wages, or working conditions as the result of the exercise of his rights under this procedure" (Id., 2(d)); "Discipline shall be imposed only for incompetency or misconduct." (Id., 6(a)).  On information and belief, Pinsky and Shmid were and are aware that Plaintiff was in an employment relationship protected by civil service law and contract. In her position as police officer, the Plaintiff always performed her duties in a fully competent and professional manner and received positive evaluations during her employment. Plaintiff had committed no wrong and the actions of Marlowe, Schafer, Schmid, Pinsky, and the Manlius Police Department were unlawful by *inter alia*, subjecting her to an Internal Affairs investigation, refusing to enforce the Order of Protection as against Schmid, causing Plaintiff to surrender her weapons and equipment, claiming she resigned, and deliberately harming her reputation by making false and defamatory statements about her.  The actions of the Defendants were unlawful and intentional to cause injury and harm to Plaintiff without basis in law or pursuant to any regulation, rule, or procedure.

47.   These actions are in violation of the New York State Human Rights Law and laws preventing discrimination and violation of civil rights.  The Defendants have participated in and maintained a long standing practice, custom and policy of discrimination against women.

48.   The Defendants foster an atmosphere of discrimination, retaliation, hostility, and

harassment based upon sexual and racial factors.  Such treatment was and has been known to occur

for years and the Defendants have deliberately, recklessly,  and/or negligently participated in such

acts and/or failed to cease or discourage such practices.  Despite knowledge of such practices and

treatment, the Defendants have deliberately and/or recklessly failed to correct or cease such practices

nor seek elimination or solutions to said practices.

49.  Instead, the Defendants have encouraged, approved, continued and expanded, concealed

and participated in such perpetuation of said hostility and illegal and unconstitutional practices to the

detriment and injury of the Plaintiff.

50.  By acting as described above, the Defendants acted with malice or with reckless disregard

for Plaintiff's rights, causing Plaintiff to suffer embarrassment, humiliation, degradation, anxiety,

stress, loss of pay, loss of benefits, harm to reputation and good name,  insomnia, anger, family

discord, headaches, stomach upset, nervousness, anxiety, loss of appetite, and pain.  Such acts by the

Defendants have injured the Plaintiff and subjected her to extreme emotional harm and injury and she

is entitled to compensation therefor.

### AS AND FOR THE FIRST CAUSE OF ACTION
### PURSUANT TO THE NYS HUMAN RIGHTS LAW
### AGAINST ALL DEFENDANTS

51.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

50 above.

52.  By engaging in the foregoing conduct, Defendants have violated rights guaranteed to the

Plaintiff under the Human Rights Law of the State of New York in that Plaintiff was harassed and

subjected to a hostile work environment because of her gender.

53.  As aforementioned, Plaintiff has sustained damages by reason of the Defendants'

wrongful actions and omissions.

## AS AND FOR THE SECOND CAUSE OF ACTION
## PURSUANT TO THE NYS HUMAN RIGHTS LAW
## AGAINST ALL DEFENDANTS

54.  Plaintiff repeats and re-alleges each and every allegation set forth in

paragraphs 1 through 53 above.

55.  By engaging in the foregoing conduct, Defendants have violated rights guaranteed to the

Plaintiff under the Human Rights Law of the State of New York in that Plaintiff was treated in a

disparate manner because of her gender.

56.  As aforementioned, Plaintiff has sustained damages by reason of the Defendants'

wrongful actions and omissions.

## AS AND FOR THE THIRD CAUSE OF ACTION
## PURSUANT TO THE NYS HUMAN RIGHTS LAW
## AGAINST ALL DEFENDANTS

57.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

56 above.

58.  By engaging in the foregoing conduct, Defendants have violated rights guaranteed to the

Plaintiff under the Human Rights Law of the State of New York in that Plaintiff was retaliated against

for opposing discrimination.

59.  As aforementioned, Plaintiff has sustained damages by reason of the Defendants'

wrongful actions and omissions.

**AS AND FOR THE FOURTH AND FIFTH CAUSES OF ACTION**
**PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS**

60.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 59 above.

61.  By engaging in the foregoing conduct, Defendants have violated rights guaranteed to the Plaintiff under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that Plaintiff was subjected to a hostile work environment (Fourth Cause) and discriminated against (Fifth Cause) because of her gender.

62.   With respect to the named municipal Defendants, the actions and omissions as aforementioned constitute municipal policy since they are the actions and omissions of final policy making officials of the Town of Manlius and/or Village of Manlius.  In addition, said municipal Defendants created, maintained and/or fostered a custom, policy or practice of discrimination thereby causing Plaintiff injury and harm.  Finally, said municipal Defendants failed to adequately train officers and supervisors on the rights of employees to be free from discrimination and retaliation.

63.   As aforementioned, Plaintiff has sustained damages by reason of the Defendants' wrongful actions and omissions.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS**

64.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 63 above.

65.  By engaging in the foregoing conduct, Defendants have violated rights guaranteed to the

Plaintiff under the First Amendment to the United States Constitution in that Plaintiff was retaliated against for exercising her free speech rights to oppose discrimination and to petition the government for redress of grievances.

66.   With respect to the named municipal Defendants, the actions and omissions as aforementioned constitute municipal policy since they are the actions and omissions of final policy making officials of the Town of Manlius and/or Village of Manlius.   In addition, said municipal Defendants created, maintained and/or fostered a custom, policy or practice of retaliation thereby causing Plaintiff injury and harm.   Finally, said municipal Defendants failed to adequately train officers and supervisors on the rights of employees to be free from discrimination and retaliation.

67.   As aforementioned, Plaintiff has sustained damages by reason of the Defendants' wrongful actions and omissions.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### DEFAMATION AGAINST DEFENDANT SCHMID

68.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 67 above.

69.   As aforementioned, Defendants communicated untrue statements about Plaintiff.

70.   As a result, Plaintiff sustained damages as aforementioned.

71.   The aforementioned statements are false and defamatory to the Plaintiff and were uttered with malice and ill will.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**AGAINST DEFENDANTS FOR INTENTIONAL**
**AND/OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST DEFENDANTS SCHAFER, PINSKY, MARLOWE, AND SCHMID**

72.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 71 above.

73.  Defendants engaged in extreme and outrageous conduct as demonstrated by their actions set forth above.

74.  Upon information and belief, Defendants intended to cause Plaintiff severe emotional distress.  Alternatively, Defendants disregarded a substantial probability that their conduct would cause severe emotional distress.

75.  As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress for which she has sought and received medical treatment and is entitled to compensation therefor.

**AS AND FOR A NINTH CAUSE OF ACTION**
**AGAINST DEFENDANTS PINSKY, SCHMID, SCHAFER & MARLOWE FOR**
**TORTIOUS INTERFERENCE**

76.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 75 above.

77.  By their aforementioned actions and omissions, Defendants  intentionally interfered with Plaintiff's employment with the Town of Manlius.

78.  As a result, Plaintiff sustained damages as aforementioned.

**AS AND FOR A TENTH CAUSE OF ACTION**
**FOR PRIMA FACIE TORT AGAINST MARLOWE**

79.  Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through

78 with the same force and effect as if set forth fully herein.

80.   Defendants intended to inflict harm upon the pecuniary interests of the Plaintiff by engaging in the aforementioned actions and omissions.

81.   Defendants had no justification or excuse to act in such manner and their actions and/or omissions were unlawful.

82.   The aforesaid acts and/or omissions of Defendants were intended to cause harm and injury to the Plaintiff and that as a result Plaintiff has suffered damages for moving expenses, medical costs, lost wages (including a total loss of wages in the amount of approximately $35,000 between May 2016 and October 2016 and reduced wages of at least $20,000.00 annually since that time), benefits, income, damage to her pension and retirement benefits in the sum of approximately $300,000.00 and is entitled to recover for those injuries and damages as previously set forth herein.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## UNDER TITLE VII FOR DISCRIMINATION BASED ON GENDER
## AGAINST DEFENDANT TOWN OF MANLIUS

83.      Plaintiff repeats and re-allege each and every allegation set forth in paragraphs 1 through 82 above.

84.   On or about August 2, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff's EEOC complaint was cross-filed with the New York State Division of Human Rights pursuant to a work-share agreement.

85.   On or about May 18, 2017, the U.S. Department of Justice, Civil Rights Division issued a Notice of Right to Sue letter to Plaintiff.

86.  Defendants Town of Manlius, Manlius Police Department, as Plaintiff's employers as that term is defined under Title VII of the Civil Rights Act of 1964, as amended, violated rights

guaranteed to the Plaintiff under Title VII in that Plaintiff was subjected to discrimination in matters relating to the terms, conditions and privileges of her employment because of her gender.

87.  Plaintiff sustained damages by reason of the Defendants' unlawful actions and omissions and is entitled to compensation therefor.

### AS AND FOR A TWELFTH CAUSE OF ACTION
### FOR HOSTILE WORK ENVIRONMENT UNDER TITLE VII
### AGAINST DEFENDANT TOWN OF MANLIUS

88.      Plaintiff repeats and re-allege each and every allegation set forth in paragraphs 1 through 87 above.

89.      By engaging in the foregoing conduct, Defendants have violated rights guaranteed to the Plaintiff under Title VII in that Plaintiff was harassed and subjected to a hostile work environment because of her gender.

90.      Plaintiff sustained damages by reason of the Defendants' unlawful actions and omissions and is entitled to compensation therefor.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
### UNDER TITLE VII FOR RETALIATION
### AGAINST DEFENDANT TOWN OF MANLIUS

91.      Plaintiff repeats and re-allege each and every allegation set forth in paragraphs 1 through 90 above.

92.      By engaging in the foregoing conduct, Defendants have violated rights guaranteed to the Plaintiff under Title VII in that Plaintiff was retaliated against and subjected to a retaliatory hostile work environment because of her complaints of discrimination on the basis of gender and hostile work environment.

93.      Plaintiff sustained damages by reason of the Defendants' unlawful actions and

omissions and is entitled to compensation therefor.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE**, the Plaintiff seeks judgment against the Defendants, jointly and severally, as follows:

a.  an Order enjoining the Defendants from further violating Plaintiff's rights;

b.  compensatory damages in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

c.  punitive damages as against the individuals in an amount to be determined at trial (said amount exceeding the jurisdiction of all lower courts);

d.  attorneys' fees, costs and disbursements of this action;

e.  declaratory relief finding each Defendant violated Plaintiff's rights;

f.  such other and further relief the Court deems just and proper.

Dated: August 31, 2018
at Rome, New York                                  s/A.J. Bosman
                                                   _____
                                                   A.J. Bosman, Esq.
                                                   Bosman Law Firm, L.L.C.
                                                   Attorneys for Plaintiff
                                                   Office and Post Office Address
                                                   201 W. Court Street
                                                   Rome, New York 13440
                                                   Telephone: (315) 336-9130